If you could approach and let us know who you are and who you represent. Good morning, your honors. My name is Autumn Renee Fincher of the Office of the State Appellate Defender, and I represent Dennis Edwards. Good morning, your honors. Assistant State's Attorney Alan Spellberg, representing the people of the state of Illinois. Okay, you guys know the basic rules, 15 minutes per side. Please save some time for rebuttal if you need a little extra time because we're unduly harassing you. We'll give it to you. We'll try. Well, some try better than others, but we'll all try, okay? Thank you. Please proceed. You may proceed. And I have an immediate that I would like you to start with jurisdiction and go through the varying cases relating to that. Yes, your honor. Again, my name is Autumn Renee Fincher of the Office of the State Appellate Defender, and I represent Dennis Edwards this morning. And as your honor has requested, I will discuss jurisdiction. A judgment is considered void if the court that entered the judgment is considered not to have jurisdiction, subject matter or personal jurisdiction over the claim. They had subject matter and personal. Yes, in this case, they did. Unfortunately, however, a part of jurisdiction is also the power to render a judgment. In this case, the circuit court did not have power to enter the two convictions for predatory criminal sexual assault of a child because the statute that the convictions were entered under did not exist in Illinois because it had been declared void ab initio several years before Mr. Edwards pled guilty. As such, the court did not have this power, which is as important a part of jurisdiction as subject matter jurisdiction or personal jurisdiction, which People v. Davis explained. In People v. Brown, the Illinois Supreme Court discussed the difference between a void judgment, one that lacks jurisdiction, or one that is merely voidable, which is not subject to collateral attack. In Brown, the court explained that because the judgment in Brown, like as in the instant case, was entered under a provision that was found void ab initio, the law itself never had any legal force. Therefore, the judgment entered under that law could have no legal recognition. Here, as in Brown, the statute that Mr. Edwards was convicted under was declared void ab initio in Johnson v. Edgar. So it was as if the offense of predatory criminal sexual assault never existed. What did he want to plead guilty to? We know the conduct, but what should he have pled guilty to? The state also charged 30 counts of aggravated criminal sexual assault of a child, which is also a Class X felony, with the same sentencing range. What about their argument that it can be amended? It cannot be amended on appeal at this point. The plea, the entire plea, is invalid. Because these two void convictions, illegal convictions, were an essential part of the negotiated plea agreement, the proper remedy is rescission, not reformation at this stage. And so the case needs to be remanded so that Mr. Edwards may be allowed to vacate his guilty plea. And when he vacates his guilty plea, by operation of Supreme Court Rule 605b-4, the remaining 58 counts of the indictment that are valid will be reinstated. Now, does he know that? Does he understand that they can choose any of the 58 now? Yes, he was properly admonished in the trial court when he pled guilty. So let me understand the view that you have. Basically, it would permit someone who pleads guilty to a statutory offense such as this one, which has previously been declared void ab initio, to wait it out. Somebody is going to get a long sentence. Wait it out until something happens to the complaining witness, and then file a post-conviction, say the person unfortunately is hit by a car or something like that. And then file a post-conviction, because whenever that person chooses to file the post-conviction, he's challenging a void statute. And therefore, the remand would be not a risk at all, because there would be no way for the state to prove the case. Well, this situation is actually a very rare situation, and I understand your Honor's concern. Well, I'm asking whether that's part of the scenario if we accept the void argument you're making and the fact that the remedy is not to reform, but rather to rescind and remand. Isn't that possible, my scenario? It is very unlikely, because those... That would seem to be an admission that it's possible. Anything is possible, Your Honor. But it wouldn't be foreclosed by anything you're urging. No, it would not be foreclosed. What would foreclose that happening is that a statute being declared void ab initio is actually a rare situation. And most of these cases have been previously litigated. One of the last cases was People v. Brown, and that was a different single subject violation. That was under Cervantes, not Johnson. But the fact that... I believe that Your Honor is wondering if this is going to open the floodgates to more litigation. Oh, no. I'm just saying that, you know, as a former defense attorney myself, if you were offered by mistake that type of a plea by an unsophisticated, uninformed states attorney, it might be a yippee, okay, we'll plead to this and see what happens down the road. Situation where somebody can do a gotcha. They can come up with a scenario that might end up for somebody who, say, is sentenced to natural life or 70 years, a way that within, you know, given something happening to an essential witness or the destruction of certain evidence, get out of jail free card after a period of time. Well, the fact that that situation has arisen in this circumstance, the fact that, you know, Mr. Edwards should be afforded the opportunity to vacate his plea is a very rare situation. It's very rare. The statutes that people are convicted under are declared void ab initio by the Illinois Supreme Court. And this is the sort of case that... Well, periodically we've seen our legislature ignore the single subject rule and create these issues. It's happened several times in the last 20 years. Yes, but Mr. Edwards should not be penalized for the legislature's failings. Well, he's not being penalized, is he? No, he is. In your theory. He, you know, let's, there's no presumption about whether all these witnesses are still available, but presumably on a remand, if not having occurred before, there'll be an examination about whether the state could continue to successfully prove the case such that the defendant would be inclined to enter a plea of guilty. And that is a consideration further down the line, but that doesn't affect the fact that his conviction is void because the statute it was entered under did not exist in the state of Illinois. The offense of predatory criminal sexual assault did not exist. And the fact that, you know, the complaining witness may or may not be available, and in this case Mr. Edwards has the option of pleading guilty or going to trial and discovering the state of the witness, does not affect the fact that this statute is void and his conviction is void. And yes, that is a possibility, but that is a very rare scenario. Our case presents a very unique scenario. What happens if, and I'm not saying we can do this, but what if we remanded it for resentencing? That, in this case, that would not be an option, just on resentencing, because it's not the sentence. So you'd be back again. Yes. The sentence is not what is the problem. No, I understand. Okay. What I'm saying is this case is a bad case. It was not well handled by the state. And I just don't get it how the state did what they did, but they did it. Yes. And realistically, even you probably can't just sit there and say that this guy should walk, but that's a possibility, as Justice Epstein said, because I don't know, is it 8, 10 years since the event? The event was alleged to have occurred on May 15th and 16th, 1996, so it has been quite some time. Let me ask you this. If the sentence is determined to be void, the conviction is determined to be void on the main statute, could it be resentenced under the ones that really aren't affected by this to the same amount of time? The valid counts of aggravated criminal sexual assault? It can be, but at this point you need to vacate the entire guilty plea and plead anew and allow Mr. Edwards to plead anew because the entire guilty plea is void, and it cannot be reconfigured at this stage just by substituting. What did he give up that was valuable that would affect the validity of his plea to the other offenses? He actually did not receive much of a benefit in this case. Is that Your Honor's question? He may not get much of a benefit if it gets remanded either. He's going to get less of a benefit if it goes back. That's the problem I sort of have. I mean, you're saying that admonishments were given, and I completely accept what you're saying. I have no basis to argue with you, but it seems like this is a technical problem where you could be quite correct that the guilty plea, you know, the court had no jurisdiction to accept the guilty plea because the statute was not valid at the time. But isn't it a case of be careful what you ask for? That is a risk that the defendant will run in cases like this, and that is a risk that the defendant ran in Pierre White. So he wouldn't be able to get any higher sentence than he has at this point, right? If the complaining witness was available and could testify about what had happened in the interim about the offense. He would be able to be, in your view, sentenced to a greater sentence than 45 years? The range is 6 to 30. I understand that, but having exercised his appellate right, do you think on remand he could get a higher sentence? There is the possibility, but because he has exercised his right to appeal, there is the possibility that he will receive the same sentence. The same sentence? The same sentence. Not any higher? Not any higher, but the same sentence. So to continue with sort of your Honor's questions, we just want to stress that this is such a straightforward case, that because Mr. Edwards pled guilty to two counts of predatory criminal sexual assault at a time the offense did not exist in the state of Illinois, and because the indictment alleged that he had committed these acts 13 days before the valid statute went into effect, we ask that this Court remand the matter to the Circuit Court to allow Mr. Edwards to vacate his guilty plea and plead anew to the 58 remaining valid counts of the indictment, which, as I mentioned earlier, by virtue of Rule 605B-4 would be reinstated. Thank you. Thank you. Again, Assistant State Attorney Alan Spelberg. And let me just start off by acknowledging, yes, Your Honor, there was a mistake that happened in this case. It was overlooked what happened in this case. How is something like that possible? I mean, when the case was tried three times, wouldn't they catch it somewhere? Excuse me. I'm not familiar with being tried three times. The defendant was found unfit. Yeah, but it was tried at least once or twice before. Your Honor, I don't believe that's correct. He was charged. He was found to be unfit and was remanded to the Department of Mental Health for about three years. And when he came back when he was deemed fit is when shortly thereafter he pled guilty. So I fully admit that this was overlooked. The matter was overlooked. And I know for a fact that at the time in the late 90s there was an intention to go back and address all the people who were charged with this case with predatory criminal sexual assault prior to May 29, 1996 to ensure that we got the proper charges. But I have a feeling what occurred here, and I can't confirm this, this is only my belief, that because he had been deemed unfit and was outside of the criminal court context at the time, it fell through the cracks. It's an unfortunate circumstance, but that is what I do believe happened. That seems eminently reasonable. My question for you is how can we countenance the court accepting a guilty plea on a statute that didn't exist? Well, Your Honor, let me just take a couple of steps back from that first. If I could also just answer Justice Epstein's question. Sure, go ahead. Structure it the way you want. In answer to your question, if you were to vacate his plea, if you were to remand it, he could certainly be sentenced to a greater sentence than 45 years. The case law is clear at that. The Illinois Supreme Court has held in the context of the voidness for the failure to impose consecutive sentences in a case called Garcia, which admittedly is not in our briefs because this wasn't presented, but that if a conviction is deemed void, if a sentence is deemed void, it's as if it didn't exist. And then the restrictions on greater sentencing doesn't apply. And so, yes, there is a very real consideration for the petitioner in this case that he could be subject to a much greater sentence than a total of 45 years if he were to be given the relief that he's actually asking for here. And, again, looking at the facts of this case, the 45-year sentence was a very fair, favorable deal to the petitioner in this case. This is a horrible, brutal rape of an 8-year-old girl. The petitioner tricked the girl's mother that he was going to take her out to buy a bicycle. Instead, he brought her to an abandoned warehouse, tied her up, left her there for hours, and raped her both innately and badly, leaving her to escape, beating her all along the way. But let's get back to the procedural thing. What options do we have? I mean, you've given us things that most of the things you've said, the public defender has answered quite correctly that there is very little, if any, law supporting your posture. I would respectfully disagree with that. I believe there's actually ñ admittedly there was a concern here as to the effective date of the act, but at the time that he pled guilty in 2000, in June of 2000, the offense of predatory criminal sexual assault had been reenacted. It was a valid offense at the time that it was ñ that the judgment was entered. The only question is whether or not it could be applied to him for acts that occurred on May 15th and 16th. Well, it didn't. Right. It did not. But that's a question of experts. The question is whether if we enact a new law today and then say that you committed or one committed the same act 10 years ago, whether they could be charged with that today. And clearly they could. Yes, Your Honor. The question is whether that's void or voidable under the circumstances. I was interested in the fact that the only reference to people versus Thompson in your brief really didn't try to distinguish it. It was only to say that ñ In reference to raising a void claim on a ñ Right. Would you like to try to distinguish Thompson here? Sure. Thompson was a scenario where a defendant was subjected to an extended term sentence that he wasn't lawfully eligible for. There were not ñ there was nothing that could be done that he could waive his right into an extended term sentence. And there's nothing that the State could do to create his rights in an extended term sentence. And that's why I'm saying that this has to be viewed what happened here. In the Thompson case, the Supreme Court, our Supreme Court, we very recently reiterated that a sentence which does not conform to a statutory requirement is void. Yes. Now, I don't think it's reasonable to argue that when someone is sentenced under a statute that doesn't exist, that that doesn't fall within the rubric of a sentence that is not allowed under a statutory scheme. Your Honor, I understand the point. What that question is really raising, though, is a question of ex post facto application of statutes. The law is clear that if the legislature passes a law, it cannot be applied in an ex post facto fashion. We understand that. That's what the Constitution says, both the Illinois and the Federal Constitution say. Aren't you, just by reclassifying something which is both ex post facto and not justified by the statute, saying ignore the latter and only focus on the former, whether it's ex post facto? I mean, it was conceivably a circumstance where you could have one but not the other. Your Honor, what I would say is that in this situation, it's the same exact analysis. The reason why it's not covered by the statute is because the acts here occurred prior to the effective date of 89-462. And that's a straight up direct ex post facto question. You're really having two, what you've done is you've raised two, a second fault with the plea in this case. One is that it's not justified by a statutory scheme because the statute doesn't exist. But secondly, because it was later reenacted, it would be an ex post facto application where we were to allow it to stand. And then you're knocking down your straw man by saying forget the fact that it's not justified by the statute. Instead, just focus on whether this would be voidable if under the analysis of ex post facto, when the Supreme Court has told us that it's void under Thompson anyway. Your Honor, in terms of the void part, and I understand what you're saying, that you feel I'm not addressing the point. The Illinois case law has long recognized, we cite these cases in our brief, the Myrick case, the Turner, the Bassin case. They all recognize that a plea to something that's not even a valid crime, that's a nonexistent crime, can still be valid. It's still within the court's authority to do that. It doesn't render the judgment itself void. But Myrick came up in a situation where somebody could have been, he probably was, I couldn't tell from the decision, but he probably was charged with attempt murder. And instead they bargained it down to the nonexistent offense of attempt voluntary manslaughter. And he received the benefit of being sentenced in a lower classification of crime, if you permit the supposition that this crime would have existed. It would have been one less than voluntary manslaughter, because it would be an attempt. And he received the benefit of having the larger, the charged crime of attempt murder, dismissed. Well, here, there was no such bargaining down in terms of having the higher classification of crime dismissed. He pled to the higher classification of crime. All he received in benefit was an agreed, negotiated sentence of a certain amount. Isn't that a distinction? Well, I believe it's a distinction without a difference, Your Honor, because the benefit that he did receive here, as I said, I mean, this was a horrific crime. He was clearly and likely facing a much greater sentence. And if it were to go back for retrial, it would clearly and likely end up with a much greater sentence. And so within that context, what he was looking at and what he was considering, it was a certain benefit to him. He clearly achieved the benefit of the bargain in that regard. And again, Your Honor, I would say I appreciate the point that you believe that Myrickies was a deal down from something to try and find something based off of a charge of attempt murder. But the key there is, in relation to your earlier question, is it wasn't authorized by statute. If it's not authorized by statute and is void, then Myrickies and Turner and Bassan are all wrong also. Except, though, doesn't Myrickies predate Thompson? Yes. And doesn't it come out of the Fifth District and not the Illinois Supreme Court? That's true, Your Honor, yes. Those are two valid points. Maybe Myrickies wouldn't have been decided that way following Thompson. Except, again, I would stress also, and this is an important point that we raise in our brief, in pointing out that all the cases relied upon by the petitioner here, they're almost all trial cases. And when a guilty plea, a knowing and intelligent guilty plea, is mixed into the factor, that changes the calculus. It requires an examination of different factors because the defendant – But Thompson was a guilty plea. I'm sorry, I don't remember Thompson being a guilty plea. If it is, I apologize. I think – I don't remember that. It was clearly talked about in the – If it were, I apologize. Wait, let me just take a look. I don't think it was. In 1999, defendant Ernest Thompson entered negotiated pleas of guilty to – That's first sentence of the opinion. I do apologize. In answer to your question, P.R. White, yes, it was a guilty plea, but that was a direct appeal from the guilty plea, which is an important consideration here. What we have here is a defendant in an admittedly horrific crime gave a knowing, involuntary plea of guilty, and now he's in court asking, in a knowing, involuntary fashion, asking to go back and perhaps be subject to giving – being given a greater sentence. Yes. That is possible, but – And you have the cases that seem to be against you. Why don't you grant his wish? Well, Your Honor, because we have interest in the finality of this. We don't have an interest necessarily in going back and trying to start all over again. That I completely – And we have victims who we have to respect. Victims as – admittedly, this is a horrific crime. This is a little girl who was vandalized in a horrific fashion, and to have that woman, that young woman, now relive it, now 17 years after the fact is – it's something that we do not relish. It is something that we do not want to do. We have an obligation to our victims to protect them, too. Understood. A couple other things, just getting back to the Brown case, which counsel has referred to. If I could just point out, Brown was not a scenario which is directly in point, because in Brown, the transfer hearing, which was deemed to be void, occurred under the statute, which was void of initio, but their new statute had not been reenacted at the time of the transfer hearing. There was no valid law available for the court to rely on at the time of the transfer hearing. Again, unlike here, where the plea was entered after the statute had been reenacted, after the court had the authority to impose judgment upon that offense. And, Your Honor, going back to – and I realize that we may be talking past each other, but going back to the point about if it's expos facto or void, or are they two separate things, if – to accept an assertion that voidness is the only – is a separate question from expos facto in this type of scenario, it means that we would never reach expos facto, and the laws of expos facto would never be applied. And I would just offer as a hypothetical, if instead of this being a scenario of the offense being declared void of initio from the start, instead it was simply a charge – offense that became effective May 29th, 1996, for the very first time, and a charge was mistakenly levied against the defendant for acts that occurred on May 15th and May 16th, exactly here, we would not be talking about void of initio or voidness. We would only be talking about expos facto. And if it's the exact same factual scenario here 16, 17 years later, we would be asking, is he allowed to raise an expos facto claim in an appeal from a post-conviction petition which was never raised before? The question would solely be expos facto at that time. We wouldn't have to worry at all about any kind of void of initio. We admit that the statute was declared void of initio under Johnson v. Edgar. We understand that. The question is, what happened after that? What happened as of May 29th, 1996, when 89-462 was reenacted? What happened in June of 2000 when he pled guilty? What happened 17 years later, 16 years later? But you're disagreeing with Tellez v. Valencia just by your own argument. Your Honor, no, I don't believe I am for two reasons. One, Tellez v. Valencia, again, was a jury trial. But two, Tellez v. Valencia dealt with a judgment that was entered prior to the new statute being enacted. He was convicted under the void statute. He wasn't just charged under the void statute. He was convicted under it, too. And so I don't believe that I am in any way contradicting Tellez v. Valencia. Admittedly, I'm distinguishing it, but I don't believe I'm contradicting it. But I do believe that the proper analysis here has to be ex post facto, because that is the constitutional guarantee which addresses imposing criminal convictions, imposing criminal liability upon defendants for conduct which occurs prior to the statute being enacted. And if the void assertion were to, or the void ab initio assertion were to override that, then we would really have only one question in all of our cases, which would be, is it void? Is it required by the statute? And although counsel stated the void ab initio claims are very rare, this Court knows well that void claims are extraordinarily common. After Thompson especially, every claim practically on appeal has been, this is void because it doesn't match the statute. It doesn't satisfy what's going on. And so what we could be faced with is a deluge of cases coming forward that, for some reason, it doesn't match up factually, legally, in any way. And so that's why I would stress this Court, the proper analysis here is ex post facto. Admittedly, from the start, there's a problem here. I apologize on behalf of the State for overlooking this. Everyone overlooked this at the time. But we have to accept the record as we have it today with the manner of law that we have. And examining it from an ex post facto scenario, it doesn't become void. And that's our position. Thank you. Thank you. Thank you, Your Honors. I do want to address the State's argument concerning the fact that this should be addressed under an ex post facto analysis. And the State's position on ex post facto presupposes a retroactive application of the statute that was properly enacted on May 29, 1996. And as Your Honor pointed out, that is in direct contradiction of Tellez-Valencia. In Tellez-Valencia, the Court discussed why this law was not to be retroactively applied. And the fact that the defendant in that case was convicted following a trial is of no import to whether or not that statute should be retroactively applied. First of all, the public act that created the offense of predatory criminal sexual assault constituted a substantive change in the law and therefore cannot be applied retroactively. Also, there is no legislative intent clearly delineated in the properly enacted statute that demonstrates that it should be retroactively applied. Is that necessary? To have expressed language? It's not necessary, but there is no indication that it's clearly intended by the legislature that it was supposed to be retroactively applied. And that issue has been litigated. But isn't Mr. Spielberg's argument the fact that it was basically reenacted? Now if it hadn't been reenacted, then you'd have a pure claim of not justified by statute. His argument basically is because the legislature took the step of reenacting the statute, it takes it out of that analysis and that act by the legislature says that we can only look at it as ex post facto. That is basically his argument. And we disagree with that argument. I'm giving you the opportunity to do that. Thank you. We disagree with that argument because it violates every rule and every justification for having a defendant convicted of a crime that did not exist at the time. The offense of predatory criminal sexual assault did not exist until May 29th, 1996. These acts were alleged to have occurred on May 15th and 16th of 1996. Therefore, it's not an ex post facto problem because it is our position that that offense did not exist. And that is the Illinois Supreme Court's position that that offense did not exist until May 29th, 13 days after this offense occurred or was alleged to have occurred. All right. Thank you. Thank you very much. And with that, we would again ask that this court remand the matter to the circuit court to allow Mr. Edwards to vacate his guilty plea and plead anew to the 58 remaining valid counts of the indictment, which would be reinstated under Rule 605B4. So you're saying he would plead anew? We should be able to change that. We're not going to have a claim of fitness brought up again, are we? That is something that will be decided below. That would be interesting. Okay. Thanks once again for great brief writing and arguments. And we'll take the matter under advisement. And to the State, you had nothing to do with this underlying case. I don't think he feels blamed. You did the best you could with what you had to deal with. I think both sides did a fine job. Thank you. We have a split panel on the next, so we will come back for the next case.